■ In the Matter of JOAN DAGANI, Appellant. [640 NYS2d 537] —Order, Supreme Court, Bronx County (Philip Modesto, J.), entered February 28, 1994, which allowed petitioner $26,655 of the $152,632 she requested as mother and natural guardian of the infant, Sharona Dagani, in reimbursement from the guardianship account for extraordinary expenses incurred in the care of the infant between 1988 and June 1993, unanimously affirmed, without costs or disbursements. Order, same court (Lottie E. Wilkins, J.), entered December 15, 1994, which denied petitioner's two applications for reimbursement for extraordinary expenses incurred in the care of the infant in the amount of $48,168.71 for the period from July 1993 to February 1994 and for similar expenses in the sum of $33,556.85 for the period from March 1994 to August 1994 and for an increase in the semi-annual allowance provided in the compro-

mise order from $25,000 to $35,000, unanimously modified, on the law and on the facts, to vacate the denial as to the applications with respect to the two discrete time periods and to remit said applications with respect to those two time periods to the Supreme Court for further proceedings and a hearing, if necessary, and, except as thus modified, affirmed, without costs or disbursements.

This appeal arises out of three separate *ex parte* applications by petitioner, the mother and natural guardian, for reimbursement of extraordinary expenses allegedly incurred on behalf of the infant, Sharona, born with cerebral palsy and spastic quadriplegia, out of the infant's guardianship account, funded by the proceeds of a settlement awarded to the infant of a medical malpractice action, based on claims of negligence in the pre-natal care and delivery of Sharona, brought by petitioner on her behalf. The malpractice action was settled, by compromise order dated July 6, 1993, for $2,825,000, out of which approximately $462,000 was awarded to the attorneys representing the infant and petitioner, $100,000 was paid to petitioner and $15,000 to the child's father for their loss of services claims, and $7,924.30, as against $191,498 sought, was paid to petitioner in reimbursement of her documented extraordinary expenses in caring for the infant to the date of the compromise order. The order also provided for the further semi-annual withdrawal, without further order of the court, of up to $25,000, upon documented proofs and a strict accounting to the court, for expenditures on behalf of the infant. Leave was granted to seek further reimbursement of extraordinary expenses to the date of the compromise order upon submission of documented proofs.

On December 13, 1993, petitioner sought such further reimbursement in the sum of $152,632 for the period January 1988 to June 1993 supported by limited documentation, including handwritten acknowledgements of receipt of cash payments by caregivers and therapists. A hearing was held at which testimony was taken. The IAS Court granted the petition to the extent of allowing $26,655, representing the cost of tuition at a private conductive therapy institution (Peto Andras Institute for Conductive Education of the Motor Disabled) in Budapest, Hungary ($9,166); airfare to Hungary for petitioner, the infant and a caregiver ($10,239) and the cost of a car purchased in New York to transport the infant ($7,257). The balance sought was denied as lacking documentation.

Petitioner thereafter, in October 1994, filed two additional applications. In the first, she sought reimbursement for

extraordinary expenses incurred in the care of the infant in the sum of $48,168.71 for the period from July 1993 to February 1994. In the other, she requested reimbursement in the sum of $33,556.85 for the period between March 1994 and August 1994 and an increase in the semi-annual allowance provided in the compromise order from $25,000 to $35,000. She submitted receipts for services such as airfare and taxis. For caretakers and therapists, she submitted personal receipts with signed acknowledgements from the service providers. In her affidavit she explained that banks in Hungary do not provide personal check service; therefore, her documentation in that regard consisted of signed acknowledgements of cash payments. The IAS Court (Wilkins, J.) denied the applications in their entirety, in part, because many of the requests were "duplicative of requests previously denied by Justice Modesto" and also for lack of documentation. The court also referred to two letters from a primary caregiver and his wife, not part of the record, which, according to the court, "seemed to add legitimacy to Justice Modesto's concerns regarding [petitioner's] credibility." The court also denied petitioner's request for an increase in the semi-annual allowance. We affirm the first order denying petitioner's request for reimbursement except for the sum of $26,655. The second order denying petitioner's request in toto is modified to vacate the denial of the two reimbursement applications and to remand those applications for a determination, on the merits, and a hearing, if necessary.

Applications for reimbursement from an infant's guardianship account are governed by CPLR 1211 (a), which authorizes a petition "for the application of an infant's property or a portion thereof to the infant's support, maintenance or education". Withdrawals are permitted "only to the extent required for necessities and education that cannot otherwise be provided particularly since the needs of the infant will undoubtedly increase in ensuing years." (*Ahders v Southampton Hosp.*, 90 AD2d 508.) There should be "unequivocal proof" of the necessity of each expenditure before a court in its discretion permits withdrawal. (*Manikas v Misericordia Hosp.*, 111 Misc 2d 323, 324.) Judged by such a standard, it is clear that the first order, allowing only $26,655 in reimbursement, limited to those expenditures for which there was documentary proof, for the period from January 1988 to April 1993, was an appropriate exercise of discretion. Reimbursement was denied for all expenses documented only by handwritten notes from those claiming to have provided a service, such as the salaries of two caregivers and two apartment rentals. Moreover, the court's determination was reached after a hearing where essential

credibility determinations were made and which are entitled to great deference upon appellate review. (*See, People v Sass*, 217 AD2d 428; *Richstone v Q-Med, Inc.*, 186 AD2d 354.)

The second order, however, presents an altogether different picture. The court was apparently under the misapprehension that the two reimbursement requests, for two discrete periods, were duplicative of earlier requests. They clearly were not. It is also quite obvious that the court made no independent credibility determination, simply deferring to the first court's determination on that issue, and failed to make any substantive evaluation of the documentation being offered in support of the applications. It should be noted that petitioner on these applications now submitted business receipts to evidence payment rather than handwritten notes, as she did on the earlier application. Moreover, some of the expenses clearly were documented. Contrary to its reasoning, it is the court's role to parse through the requests to determine if adequate documentation has been provided. Accordingly, we remand for full consideration of the second two applications and a hearing, if required. Needless to say, nothing we have stated herein should be construed as evincing our acceptance of these claims. That is the function of the IAS Court, which has the ability to make credibility determinations and the capacity to inquire and determine whether the services alleged were necessary for the infant's care. On this record, the request for an increase in the semi-annual allowance provided in the compromise order was properly denied. Concur—Sullivan, J. P., Ellerin, Wallach and Rubin, JJ.